UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ROSS THOMAS BRANTLEY, III,**

Petitioner,

v.                                                    **No. 4:23-CV-317-P**

**BOBBY LUMPKIN, Director,**
**TDCJ- CID,**

Respondent.

## MEMORANDUM OPINION & ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Ross Thomas Brantley, III ("Brantley"), a state prisoner confined in the Wynne Unit of the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought, the Court concludes that the petition must be **DENIED**.

## BACKGROUND

Brantley is in custody pursuant to judgments and sentences of the Criminal District Court Number One of Tarrant County, Texas, in case number 1609793R, styled *The State of Texas v. Ross Thomas Brantley, III*. CR[1] 573–605 (judgments and sentences for ten counts of aggravated sexual assault of a child and six counts of indecency with a child), ECF No. 30-2. In that case, Brantley pleaded not guilty before a jury, but the jury found him guilty and sentenced him to life imprisonment for each

---

[1]"CR" refers to the trial court Clerk's Record followed by the applicable page number found on this court's docket at ECF No. 30-2.

1

of the counts of aggravated sexual assault and twenty years' confinement for the counts of indecency with a child on September 13, 2019, with each count to be served concurrently, except Counts One and Two, which are to run consecutively. *Id.*

Brantley appealed, but the appellate court affirmed his convictions in August of 2021. *Brantley v. State*, No. 02-19-00349-CR, 2021 WL 3679239 (Tex. App.—2021, *pet. ref'd*). He then filed a petition for discretionary review with the Texas Court of Criminal Appeals (TCCA), but it was on December 15, 2021. *Brantley v. State*, No. PD-0645-21 (Tex. Crim. App.—2021), ECF No. 30-23; *see* https://search.txcourts.gov/Case .aspx?cn=PD-0645-21&coa=coscca.

Although Brantley has a long habeas history, only his two most recent state habeas applications relate to the underlying conviction facts made the basis of this § 2254 petition. Pet. 1, ECF No. 1. He filed his first relevant state habeas application in March 2022, but the TCCA dismissed his application without written order for non-compliance with Rule 73.2 of the Texas Rules of Appellate Procedure on April 27, 2022. SHCR-30[2] at 43-48, ECF No. 30-108; "Action Taken" sheet, ECF No. 30-103. Brantley then filed a federal § 2254 petition, but the district court dismissed that petition without prejudice on December 7, 2022. *Brantley v. Lumpkin*, NO. 4:22-CV-415-O, 2022 WL 17489180 (N.D. Tex. Dec. 7, 2022).

Brantley filed his second relevant state habeas application no earlier than May 5, 2022. SHCR-31 at 61-64, ECF No. 30-111.The TCCA "denied" his application "without written order on findings of the trial court without hearing and on the Court's independent review of the record" on December 21, 2022. SHCR-31 "Action Taken" sheet, ECF No. 30-109. Brantley then filed the instant petition under 28 U.S.C. § 2254

---

[2]"SHCR-30" refers to the Clerk's Record of pleadings and documents filed with the state court during Petitioner's first state habeas corpus proceedings relating to his current claims. *See generally, Ex parte Brantley*, Application No. 77,234-30, ECF Nos. 30-103 through 30-108. "SHCR-31" refers to the Clerk's Record of pleadings and documents filed with the state court during Petitioner's second state habeas corpus proceedings relating to his current claims. *See generally, Ex parte Brantley*, Application No. 77,234-31, ECF Nos. 30-109 through 30-111.

no earlier than March 15, 2023. Pet. 15 (signature date), ECF No. 1. The State summarized the facts of this case in its appellate brief as follows:

> [Appellant] was convicted by a Tarrant County jury of sixteen sex offenses committed against JT1, the daughter of his girlfriend, TT. CR. at 538–553; 573–604. Following three days of testimony, during which fourteen witnesses testified for the State, Appellant was convicted and sentenced by the jury to confinement for life and a fine of $10,000 in each of the first ten counts, and twenty years' confinement and a fine of $10,000 in each of the remaining six counts. CR. at 557–572; 573–604. The trial court ordered the sentences on counts one and two run consecutive ("stacked"), with the sentences on the remaining counts ordered to run concurrent. CR. at 573–605; RR. Vol. VII at 100.

> Summarized, the testimony showed JT endured a much-repeated pattern of sexual abuse at Appellant's hands beginning in 2005, when she was "probably around 8 or 9" years old. RR. Vol. 5 at 19.

> JT told the jurors she was a twenty-year-old student attending Sam Houston State University in Huntsville. RR. Vol. 5 at 7–8. She was TT's only daughter, the oldest of three siblings. RR. Vol. 4 at 36–37. Her biological father died shortly before she turned four, and during the course of her mother's subsequent relationship with Appellant, JT was often alone with him. RR. Vol. 5 at 20–26. Most of the abuse occurred after her mother and Appellant moved the family into an apartment in Southwest Fort Worth, then following a subsequent move to a home in the Meadowbrook area. RR. Vol. 5 at 20–22, 43–36 [sic]. The abuse was repeated ("it happened a lot" RR. Vol. 5 at 25), and consisted of all forms of sex: organ to organ contact, including penetration; oral sex by Appellant on JT, as well as his insistence that she perform oral acts on him; anal sex; and forced contact during foreplay. RR. Vol. 5 at 22–27, 30, 32, 37–38. Appellant also required that JT watch graphic pornographic films in order to educate her on sex, and threatened her into remaining silent. RR. Vol. 5 at 25, 28. Her sexual abuse outcry occurred after she was discovered to have contracted genital herpes, a condition Appellant had earlier confided to TT that he had. RR. Vol. 4 at 65-69; Vol. 5 at 48–49.

3

> This and other aspects of JTs outcry were corroborated by other witnesses, including a nurse who examined her when she testified positive for herpes, the detective whose testimony forms the basis of Appellant's complaint on appeal, and JT's mother, TT. RR. Vol. 4 at 35–84; 108–154; 164–197.

State's Brief at 6–7, *Brantley v. State*, No. 02-19-00349-CR, ECF No. 30-13. Brantley alleges as follows:

> I. The State violated his right to a speedy trial by waiting over two years to bring him to trial;
>
> II. He received ineffective assistance of trial counsel because trial counsel failed to investigate, object to bolstering, move for a directed verdict, impeach the victim's mother, obtain "a specialist" to testify for the defense, ask for mistrial based on an alleged juror outburst, object to the indictment, obtain his medical records, or move for a speedy trial;
>
> III. The State violated the Double Jeopardy clause by reindicting him with a new cause number or new counts;
>
> IV. He is actually innocent because DNA evidence did not match him; and,
>
> V. A juror was biased, depriving him of an impartial jury and a fair trial.

Pet. 5-10, ECF No. 1; Supp. Pet. 2-3; Am. Pet 5, ECF No. 22; Reply/Traverse.[3]

## LEGAL STANDARD

Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through appeal. For claims that

---

[3]Brantley asserted claims in his § 2254 petition (ECF No. 1), in a supplemental petition (entitled "Motion for Leave to File a Motion of Immunity") (ECF No. 18), and in an amended petition (entitled "Motion for Leave to Amend") (ECF No. 22). The Court has considered the claims in all three pleadings. As such, the motion for leave to amend (ECF No. 22) is **GRANTED** only to the extent the Court has considered the grounds raised therein. Brantley also filed a document entitled "Motion for Leave to File Traverse") which the Court has construed as a reply/traverse raising the additional ground of juror bias. ECF No. 33. That motion is also **GRANTED** only to the extent the Court has reviewed and considered a new juror bias claim.

were adjudicated in state court, § 2254(d) imposes a highly deferential standard that demands a federal court grant habeas relief only where one of two conditions are present in the state court judgment. A federal court may grant relief if the state court adjudicated a constitutional claim contrary to, or unreasonably applied clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011) (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2002)). Or the court may grant relief if the state court decision was based on an unreasonable determination of facts in light of the record. *Id.* Section 2254(d)'s standard is necessarily difficult to meet because it was so designed.

A state court decision can be "contrary" to established federal law in two ways. *(Terry) Williams*, 529 U.S. at 405–06. First, if the state court applies a rule that contradicts Supreme Court precedent. *Id.* at 405. Second, if the state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent but reaches an opposite result. *Id.* at 406.

A state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *(Terry) Williams*, 529 U.S. at 406. A state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. The focus of this test is not on the state court's method of reasoning, but rather on its ultimate legal conclusion. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").

To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

5

decision of this Court." *Harrington*, 562 U.S. at 87. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, in reviewing a state court's merits adjudication for reasonableness, a federal court is limited to the record that was before the state court. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The question for federal review is not whether the state court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). If a higher state court offered different grounds for its ruling than a lower court, then only the higher court's decision is reviewed. *Id.* "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 526 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This Court must accept as correct any factual determinations made by the state courts unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence."). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's

6

conclusions of mixed law and fact."); *see also Sumner v. Mata*, 449 U.S. 539, 546-47 (1981) (holding that state appellate courts' findings are entitled to the same respect that trial judges' findings receive). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review."). Further, the district court can "infer the state court's factual findings" so long as "some indication of the legal basis for the state court's denial of relief" exists. *Ford*, 910 F.3d at 235 (citing *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)).

Moreover, where the state's highest court's decision lacks any reasoning, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

Furthermore, an evidentiary hearing is precluded unless: (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000). For example, a petitioner's failure to present controverted, previously unresolved factual issues to the state court can qualify as a "failure" under the plain meaning of § 2254(e)(2). *Id*. at 433. However, Section 2254(e)(2) has "force [only] where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 563 U.S. at 185. Accordingly, even if a petitioner can leap the § 2254(e)(2) hurdle, "evidence introduced in

federal court has no bearing on § 2254(d)(1) review." *Id.* And whatever discretion remains after *Pinholster* to hold an evidentiary hearing, it is still appropriate to deny such a hearing if sufficient facts exist to make an informed decision on the merits. *Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007). Petitioner has not met this standard for a hearing.

Also, pre-AEDPA precedent forecloses habeas relief if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## ANALYSIS

Applying the above referenced standards, the Court finds that it must defer to the state court determinations and deny habeas relief. The appellate court first considered one of Brantley's claims and affirmed his conviction, and this decision was left standing by the Texas Court of Criminal Appeals. *Brantley*, 2021 WL 3679239; *Brantley*, No. PD-0645-21. Then the Court of Criminal Appeals denied Brantley's state habeas application on findings of the trial court "without written order on findings of the trial court without hearing and on the Court's independent review of the record." SHCR-31 at 163–92, 196 (habeas trial court findings of fact and conclusions of law), ECF No. 30-111; SHCR-31 "Action Taken" cover sheet, ECF No. 30-109. Hence, this was an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.").

8

There has been no showing that the state court resolution of Brantley's allegations resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d) (West 2014). Therefore, Brantley is not entitled to relief in this § 2254 proceeding. The Court also engages Brantley's claims in detail and rejects them for the particular reasons discussed below.

## I.   Speedy Trial Claim-Procedurally Defaulted

Brantley complains in each pleading that the State denied his right to a speedy trial. Pet. 5, ECF No. 1; Supp. Pet 1, ECF No. 18; Am. Pet 4, ECF No. 22.  Since Brantley did not raise this claim on direct appeal as required under Texas law, and the state habeas court refused to consider this claim because he failed to raise this claim on direct appeal, it is procedurally defaulted.

The state district court during state habeas proceedings concluded that it could not review this claim due to Brantley's failure to preserve and raise the claim for direct appeal purposes. SHCR-31 at 190-91, ECF No. 30-111. Under the procedural-default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim "clearly and expressly" based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729-735 (1991); *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004). Indeed, the last state court to consider the claim was the Texas Court of Criminal Appeals, which "denied" Brantley's application "without written order *on findings of the trial court* without hearing and on the Court's independent review of the record." SHCR-31 at "Action Taken" sheet, ECF No. 30-109 (emphasis added). The state habeas court determined the following:

> 113. Generally, a failure to object will preclude habeas

9

review of a claim just as it would on direct appeal. *See Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989).

114. To preserve error for appeal, there must be a timely, specific objection and an adverse ruling by the trial court. Tex. R. App. P. 33.1(a).

115. Because Applicant never received an adverse ruling on his motion for speedy trial, he failed to preserve the error for appeal.

116. Because Applicant could have raised his speedy trial claim at the trial and failed to preserve error, he cannot raise it on habeas review.

117. "It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'" *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), *on reh'g* (Feb. 4, 1998) (quoting *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)).

118. To the extent Applicant's speedy trial claim was preserved for appeal, he has forfeited the claim because Applicant failed to raise it on appeal.

119. This Court recommends that Applicant's sixth ground for relief be **DENIED**.

SHCR-31 at 190–91, ECF No. 30-111. By adopting these findings, the TCCA clearly and expressly based its denial of relief on an independent and adequate state procedural default, so Brantley's claim of the denial of a speedy trial is procedurally defaulted in this Court as well.

In order to overcome this procedural default, Brantley would have to show "cause and prejudice." *See Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas corpus relief absent a showing of cause and actual prejudice"). Brantley has offered no showing of cause or prejudice, therefore the Court must apply the procedural default and dismiss the claim with prejudice.

## II. Claims of Ineffective Assistance of Counsel

Brantley claims he received ineffective assistance of trial counsel (IAC) because his attorney failed to investigate, object to bolstering,

move for a directed verdict, impeach the victim's mother, obtain "a specialist" to testify for the defense, ask for mistrial based on an alleged juror outburst, object to the indictment, obtain his medical records, or move for a speedy trial. Pet. 5-10, ECF No. 1; Supp. Pet. 2-3, ECF No. 18; Am. Pet. 2-3, ECF No. 18. For the reasons explained below, these claims are conclusory, without merit, and/or procedurally barred.

A. <u>Law applicable to ineffective assistance claims</u>

The familiar two-prong standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to establish that counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, at 687–88. In so doing, a convicted defendant must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable professional assistance, and every effort must be made to eliminate the "distorting effect of hindsight." *Strickland*, 466 U.S. at 689. "[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, at 688.)

Next, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692. In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id*. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*; rather, the petitioner must "affirmatively prove" prejudice. *Id*. at 693.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or

prejudice makes it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 697. The Court turns to review of each specific ineffective assistance claim.

B. Failure to investigate

In his first IAC claim, Brantley complains that his attorney, Roy Keith McKay, failed "to investigate [the] case fully [claiming] he had three whole years to do it." Pet. 7, ECF No. 1. Brantley provides no details in support of this allegation before moving on to his next IAC allegation. *Id*. This claim is without merit because he provides no evidence in support of his claim and it is rebutted by the record.

"[C]ounsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). Whether counsel's investigation was reasonable depends in part on the information supplied by the defendant. *Ransom*, 126 F.3d at 723 (citing *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir.1989)). And a petitioner alleging inadequate investigation must show what such investigation would have uncovered and how his defense would have thereby benefitted. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Brantley provides no evidence of the extent of McKay's investigation or what the investigation would have uncovered. McKay explained in state habeas proceedings that he "reviewed all of the discovery provided by the state and issues brought forth by defendant." SHCR-31 at 154 (counsel McKay's affidavit), ECF No. 30-111. Given Brantley's cursory argument and lack of any evidentiary support of this claim, he fails to show that McKay's investigation was deficient and prejudicial to his case. This claim of inadequate investigation is **DENIED** as without merit. *See Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and

unsupportable by anything else contained in the record, to be of probative evidentiary value.").

C. <u>Failure to object to bolstering.</u>

Brantley also complains that McKay "failed to object during trial to detective bolerstering [sic]." Supp. Pet. 2, ECF No. 18. He does not elaborate on this claim further and does not bother explaining how the state court acted unreasonably in rejecting this claim as necessary for him to obtain federal habeas relief. *Id.*; see 28 U.S.C. § 2254(d). Brantley raised this claim on direct appeal and it was thoroughly rejected by the state appellate court, which "conclude[ed] that the record shows a plausible reason for trial counsel's not objecting to the complained-of testimony." *Brantley*, 2021 WL 3679239 at *4 (citation omitted). Brantley provides no basis for believing the state appellate court concluded incorrectly, so this claim is also without merit.

D. <u>Failure to move for directed verdict</u>

Brantley next complains that McKay "failed to move for an direct [sic] verdict once [minor victim JT] claim on the stand that Brantley had not sexually assaulted her." Supp. Pet. 2, ECF No. 18; *see also* Pet. 7, ECF No. 1 ("[McKay] did not file for a dismissal or even object.").

Brantley's factual assertion behind this claim is refuted by the record. JT testified that Brantley sexually abused her "a lot," including "educating" her with pornographic movies, vaginally and anally penetrating her, and forcing her to perform and receive oral sex. Reporter's Record ("RR") Vol. 5 at 22–32, 37–38, ECF No. 30-7. Even if JT made a conflicting or disputed statement, it provides no basis for a directed verdict, which invokes a question of whether the State presented "a prima facie case of the offense alleged in the complaint." *See* Tex. C. Crim. Proc. art 45.032 (codifying a directed verdict); *Metzger v. Sebek*, 892 S.W.2d 20, 40 (Tex. App.—Houston [1st Dist] 1994) ("The trial court should not weigh the credibility of the witnesses in determining whether a directed verdict is warranted."). Indeed, McKay

13

explained as much in his affidavit, stating "[JT's previous denial of sexual abuse to CPS] is an evidentiary issue for the jury to weigh, therefore, defense counsel did not ask for a dismissal based on this." SHCR-31 at 155 (counsel affidavit), ECF No. 30-111. Since Brantley provides no viable argument that a directed verdict would have been granted, this claim is without merit and must be denied.

E. Failure to hire "a specialist" to testify

Brantley also cites counsel's failure to find a specialist to testify on his behalf in support of his IAC claims. Supp. Pet. 2, ECF No. 18. Brantley does not specify what expert should have been called or how such an expert would have helped his case.

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001)). A petitioner seeking to show ineffective assistance of counsel for failure to call witnesses must therefore "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). The proposed testimony must be set out by affidavit or otherwise and conclusory speculation is insufficient. *Sayre*, 238 F.3d at 635-36.

Here, Brantley does not identify or substantiate any proposed expert testimony, whether said witnesses would have been available to testify, or whether the testimony would have been favorable to his case. Pet. 7, ECF No. 1; Supp. Pet. 2, ECF No. 18. Without more, Brantley's claim is conclusory and must be denied. *See Ross*, 694 F. 2d at 1011 (5th Cir. 1983); *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (rejecting ineffective assistance of counsel claim where petitioner did not present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded).

14

### F. Failure to object to indictment

Brantley next complains that McKay "failed to object to the new indictment that was rendered [nine] days before trial." Supp. Pet. 2, ECF No. 18. He provides no further explanation for this claim. *Id.* The indictment behind his underlying convictions was executed on August 26, 2019, and he was tried from September 10th through September 13th, 2019. CR 9 (Reindictment), ECF No. 30-2; RR Vol. 1, ECF No. 30-3. But Brantley does not explain how this time frame is objectionable, nor is it apparent from the record. In state habeas court, Brantley argued that McKay should have objected on double jeopardy grounds, but the state habeas court concluded that "McKay did not raise a double jeopardy claim because the allegations against Applicant were for different acts of sexual abuse and were not charges based on the same conduct," and "Applicant has failed to prove that the indictment against him was deficient." SHCR-31 at 173 (finding of fact no. 52), 187 (conclusion of law no. 81), ECF No. 30-111. Because Brantley provides no explanation for why these findings and conclusions are incorrect, this claim is without merit. *See Ross*, 694 F. 2d at 1011.

### G. Remaining ineffective assistance claims are unexhausted and procedurally barred

Brantley also complains that McKay "failed to move for a speedy trial," Pet. 2, ECF No. 18 and Am. Pet. 5, ECF No. 22 , "failed to impeach [JT's mother]" with letters that their kids missed him, Supp. Pet. 2, 9, ECF No. 18, "failed to ask for a mistrial after juror outburst at sentencing," Pet. 7, ECF No. 1, and "failed to obtain [his] medical history" indicating he had cardiovascular/heart trouble, bipolar disorder, seizures, and hypertension. Supp. Pet. 2, 11, ECF No. 18. While Brantley claimed that the State violated his speedy trial rights in state habeas proceedings, he never faulted McKay through any of these claims until his pleadings before this Court. *Id.* Because these claims were never properly raised in state court, they are unexhausted and now procedurally barred.

AEDPA's exhaustion requirements read in pertinent part as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; . . .

(c) an applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. Thus, a § 2254 petitioner must have first provided to the highest court of the state a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual claims, before a federal court will entertain the alleged errors. *Duncan v. Henry*, 513 U.S. 364, 365–366 (1995); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971).

In this instance, Brantley never properly presented these ineffective assistance claims before the TCCA. His petition for discretionary review only presented his claim that counsel was ineffective for failing to object to officer testimony. "Appellant's Petition for Discretionary Review" at 2, *Brantley v. State*, No. PD-0645-21 (Tex. Crim. App. 2021), ECF No. 30-23. Similarly, Brantley failed to present this claim before the state habeas court. He complains of a violation of his right to speedy trial but he never connects that claim to the ineffectiveness of his attorney. SHCR-31 at 49–60, ECF No. 30-111. Consequently, neither the state habeas court nor McKay's affidavit responded to these IAC claims. SHCR-31 at 154–55 (McKay's affidavit), 163–64 (state habeas court recounting Brantley's claims), ECF No. 30-111.

Brantley's failure to present these claims before the TCCA not only renders them unexhausted, but also renders them procedurally defaulted. Because Brantley already filed for a state writ challenging the cause of his incarceration, any attempt to file for another state writ challenging the same incarceration with new claims would result in a

16

citation for abuse of the state writ by the Texas Court of Criminal Appeals. *See Ex parte Whiteside*, 12 S.W.3d 819, 821-22 (Tex. Crim. App. 2000). It is well-settled that citation for abuse of the writ by the Court of Criminal Appeals constitutes a procedural default that bars federal habeas review of the merits of a habeas petitioner's claims. *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633 (5th Cir. 1995). Therefore, these claims are procedurally barred from review.

### III.    Double Jeopardy Claim

Brantley also claims the State violated his due process and double jeopardy rights when it "dismissed the original indictment and then reindicted before trial with a new cause number for the same offense." Pet. 8, ECF No. 1. The state court rejected this claim, concluding "Because Applicant did not receive multiple punishments for the same offense, he has failed to prove that a double jeopardy violation occurred." SHCR-31 at 185 (conclusion of law no. 60), ECF No. 30-111.

This Court explained in a previous § 2254 habeas proceeding,

> Reindictment for the same offense by a subsequent grand jury does not involve the bar of double jeopardy—it descends only after the trial of one of the indictments has terminated in such a way that jeopardy has attached. *United States v. Jasso*, 442 F.2d 1054, 1056 (5th Cir.1971). Jeopardy did not attach as to the first indictment where no jury had been empaneled and sworn, no witness sworn, or no guilty plea entered. *See Fransaw v. Lynaugh*, 810 F.2d 518, 523 (5th Cir.1987); *Von Burleson v. Estelle*, 666 F.2d 231, 233–34 (5th Cir. 1982).

*Hill v. Quarterman*, No. 3:06-CV-1156-P, 2008 WL 3895384 at *4 (N.D. Tex. Aug. 14, 2008). The same principles apply here. Brantley's cursory claim fails to show how his re-indictment violated his double jeopardy rights, or otherwise violated his constitutional rights. Pet. 8, ECF No. 1. Moreover, he cannot show that the state courts' denial of his claims constituted an unreasonable or contrary application of clearly established federal law as required by 28 U.S.C. § 2254(d). This claim

must be **DENIED**.

### IV.    Actual Innocence Claim

Brantley also claims he is "actual[ly] innocent" because the State failed to produce matching DNA evidence of his sexual assaults. Pet. 10, ECF No. 1. But claims of actual innocence by state prisoners do not invoke a basis for federal habeas corpus relief, absent an independent constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Brantley has not shown an independent constitutional violation, therefore, his actual innocence claim does not present a viable claim for federal habeas corpus relief.

To the extent federal courts have recognized actual innocence for federal prisoners, "[a]ctual innocence means 'factual innocence and not mere legal insufficiency.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "To establish actual innocence, [the] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.

*Schlup*, 513 U.S. at 324 (internal citation omitted). Brantley has failed to offer "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial" to support his claim that he is actually innocent. Pet. 10, ECF No. 1. Since Brantley presents no new or exculpatory evidence, he does not show actual innocence under *Schlup*.

Moreover, to the extent this claim may be construed as a claim of insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), his

claim is procedurally defaulted due to his failure to raise the claim on direct appeal. *See Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (recognizing that under Texas law a claim regarding sufficiency of the evidence may be raised on direct appeal but not in a habeas corpus proceeding); *Rambo v. Lumpkin*, No. 7:20-CV-00100-O-BP, 2021 WL 4897560 at *2 (N.D. Tex. June 14, 2021) (explaining that Texas § 2254 petitioner's insufficient evidence claim is procedurally defaulted by his failure to raise it on direct appeal), *rep. and rec. adopted*, 2021 WL 4893750 (N.D. Tex. Oct. 20, 2021). In sum, Brantley's actual innocence claim must be **DENIED**.

## V.   Juror Bias Claim

After the Respondent file an answer to all of Brantley's claims in three pleadings, he filed a reply/travers raising a new claim that Juror Number 12 ("Juror 12") was biased, depriving him of an impartial jury and fair trial. Reply/Traverse 6-7, ECF No. 33.  But the reply/traverse does not challenge the state court fact findings that Brantley did not object to Juror 12 at trial or raise this claim on direct appeal. *Id.*; SHCR-31 at 176–77 (Findings of Fact Nos. 85–89), ECF No. 30-111. Although Brantley raised this claim in his state habeas application, the state habeas court rejected the claim because Brantley did not object at trial or raise this claim during his direct appeal. SHCR-31 at 59, at 191 (Conclusions of Law Nos. 120–23), ECF No. 30-111. As explained below, the juror bias claim must be rejected as procedurally barred, and alternatively, because it fails on the merits.

A.   Juror bias claim is procedurally defaulted

The state habeas courts rejection of this claim on state procedural grounds operates as a procedural bar in this federal habeas proceeding. "The general rule is that the federal habeas court will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004); (citing *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991) and *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999)). To excuse

such a procedural default, a petitioner must demonstrate cause for his state-court default, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Here, Brantley presented his biased juror claim in a state habeas application, but it was rejected on two distinct procedural grounds, each of which provides an independent basis for dismissing this claim with prejudice as procedurally defaulted. SHCR at 191 (Conclusions of Law Nos. 120–23), ECF No. 30-111.

In its first basis for not considering this claim, the state habeas court found "[a]pplicant was twice given the opportunity to challenge juror 12 for cause" and concluded "[b]ecause Applicant failed to challenge juror number 12 for cause at trial, he failed to preserve any claim that juror number 12 should not have been allowed on the jury due to alleged bias . . . he is precluded from raising it on habeas review." SHCR-31 at 176 (Finding of Fact No. 86), 191 (Conclusion of Law Nos. 120–21), ECF No. 30-111.

Indeed, under Texas law, a party must make a timely request, objection, or motion to the trial court to preserve a claim for appellate review. See Tex. R. App. P. 33.1 (West 2019); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) ("in order to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context"). This contemporaneous objection rule constitutes an adequate state procedural bar for purposes of federal habeas review. *See Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001). The state's rejection of this claim based on Brantley's failure to comply with the contemporaneous objection rule renders this claim procedurally defaulted in this Court.

Additionally, the state habeas court gave a second procedural ground for rejecting this claim, concluding "[Brantley] has forfeited the claim because he did not raise it on appeal." SHCR-31 at 191 (Conclusion of Law No. 122), ECF No. 30-111. Indeed, under Texas law, record-based

20

claims must be raised on direct appeal before they may be considered in a habeas corpus proceeding. *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) (requiring convicts to raise record-based claims on direct appeal); *see also Busby*, 359 F.3d 708 (5th Cir. 2004) (denying claim as procedurally defaulted where it was rejected in state court based on the *Gardner* rule). Here, Juror 12's bench conference discussing her impartiality was captured by the trial reporter's record. 3 RR 125–27, ECF No. 30-5. Thus, the *Gardner* rule required Brantley to raise this claim on direct appeal, the state appellate court correctly refused to consider his claim.

Since these claims were rejected on an adequate and independent procedural ground and are procedurally defaulted, Brantley must show cause and prejudice for his procedural default before the merits of his claims may be considered by this Court. Brantley does not bother with such a showing. ECF No. 33 at 6–7. The juror bias claim therefore must be dismissed with prejudice.

B. <u>Juror Bias Claim Fails on the Merits</u>

Brantley alleges that Juror 12 was biased because she was in anguish and crying, asked to be removed, and was a victim of sexual assault. Reply/Traverse, 6, ECF No. 33.

The record both confirms and rebuts Brantley's factual assertions. During an emotional bench conference during which Juror 12 revealed she was a victim of sexual abuse as a young girl, Juror 12's affirmed her impartiality with the Court as follows:

> THE COURT: All right. And so I think you heard me say several times that one of the requirements of being a juror is you have to base your verdict only on the facts –
>
> VENIREPERSON: Correct.
>
> THE COURT: – of this case –
>
> VENIREPERSON: Yes, I understand that.
>
> THE COURT: – and the law. And so my question to you is, I know this was a terrible thing for you. I'm sorry that

21

happened to you. But could you set that aside and base your verdict in this case only on the facts that you hear in this case?

VENIREPERSON: Yes, I do think I can. I – I was surprised that I was overwhelmed when this – but I have not been public with this. There's only two people I've spoken – sorry.

THE COURT: No, that's fine.

VENIREPERSON: I'm so sorry.

THE COURT: There's some Kleenex right there.

VENIREPERSON: There's only two people I've ever spoken to about this, and that's just been in the last few years.

THE COURT: So I think you said you could set that experience aside –

VENIREPERSON: Yes.

THE COURT: – and decide this case based only on the facts of this case?

VENIREPERSON: Uh-huh.

THE COURT: Could you say it out loud. I'm sorry. She's typing –

VENIREPERSON: Yes. I'm sorry. Yes.

3 RR 126–27, ECF No. 30-5. Thus, while the record confirms that Juror 12's childhood experience as a sexual assault victim still troubled her, it also rebuts Brantley's assertion that Juror 12 asked to be removed. *Id.* Rather, Juror 12 steadfastly affirmed that she could maintain her impartiality despite her past experiences. *Id.*

The Constitution entitles a defendant to a "jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Court precedent categorizes the bias of a juror as either actual or implied; "that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." *Solis v. Cockrell*, 342 F.3d

392, 395 (5th Cir. 2003). Only "extreme situations" would justify a finding of implied (aka "imputed") bias. *Id*. at 396; *see also id.* at 399 n.42 (compiling cases where implied juror bias doctrine was applied and refused). In demonstrating actual bias, "admission or factual proof" of bias must be presented. *United States v.Bishop*, 264 F.3d 535, 554 (5th Cir. 2001) (citation omitted). "In evaluating claims of juror partiality, we must consider whether the jurors in a given case had 'such fixed opinions that they could not judge impartially the guilt of the defendant.'" *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002) (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)).

On its face, Brantley's claim fails to demonstrate actual or implied bias. Between Brantley's briefing and the reporter's record, no evidence shows that Juror 12 was actually biased. ECF No. 33 at 6. On the contrary, Juror 12 repeatedly stated that she could maintain her impartiality regardless of her personal experience with sexual assault. 3 RR 126–27, ECF No. 30-5.

Regarding implied bias, the Fifth Circuit remains undecided whether such a claim could be cognizable on federal habeas corpus since there is conflicting precedent about whether implied bias claims derive from "clearly established" Supreme Court precedent. *See Uranga v. Davis*, 893 F.3d 282, 288 (5th Cir. 2018). The Respondent asserts that such a claim would not be cognizable in these proceedings. Sur-Reply 7, ECF No. 35.

Even if such a claim were cognizable, Juror 12's status as a victim of sexual assault in a case about sexual assault does not constitute an "extreme situation" requiring the imputation of bias. *See Soliz*, 342 F.3d at 395. While a juror who has an undisclosed and close emotional involvement in a case could be presumed biased, bias cannot be imputed to a juror who discloses her prior experience and maintains her impartiality. *See Buckner v. Davis*, 945 F.3d 906, 914 (5th Cir. 2019); *see also Green v. Quarterman*, 213 Fed. Appx. 279, 281 (5th Cir. 2007) (no bias imputed to jurors in burglary trial who were also victims of burglary where jurors disclosed their prior experiences to the court). Thus, Juror

23

12, despite her victimhood, could not be presumed biased in this case.

Because Juror 12 was not actually or impliedly biased, Brantley's allegation is without merit. Even to the extent such claim is cognizable, Brantley has not shown, nor attempted to show, that the state habeas court's resolution of his claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Thus, alternatively, Brantley's newly asserted juror bias claims must be denied.

## CONCLUSION

For all of the reasons explained herein, it is **ORDERED** that Ross Thomas Brantley, III's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.[4]

**SO ORDERED** on this **13th day** of **February 2024.**

Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[4]Brantley also filed a motion for leave to file a rebuttal to the Respondent's sur-reply (ECF No. 36) filed as directed by the Court. ECF Nos. 34 and 35. That motion for leave (ECF No. 36) is **GRANTED** only to the extent the Court has considered the arguments therein. Brantley has also filed a motion for leave to be released on bond. ECF No. 37. As the Court has denied the § 2254 petition, the motion for release on bond (ECF No. 37) is **DENIED**.